CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 29 2009

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| KIMBERLY A. VAUGHT, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No. 7:08cv373 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) **By: Michael F. Urbanski** |
| Commissioner of Social Security, | ) **United States Magistrate Judge** |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Kimberly A. Vaught ("Vaught") brought this action for review of the Commissioner of Social Security's ("Commissioner's") decision denying her claim for disability insurance benefits and supplemental security income benefits under the Social Security Act (the "Act"). On appeal, Vaught principally argues that the Commissioner erred by not properly evaluating her claimed mental impairments and the medical evidence from a consulting examining psychologist and treating counselor. After carefully reviewing the entirety of Vaught's administrative record and medical history, the court finds that substantial evidence supports the Commissioner's conclusion that Vaught is not disabled from all substantial gainful activity. While it is certainly true that Vaught has met with more than her share of abuse, insult and travail in her young life, the record does not establish that she is disabled from all work as she claims. In particular, while the consulting evaluative report of Dr. Suzanne R. Eaton, Psy.D, outlines the various hardship and suffering Vaught has endured and offers conjectural concerns as to her future, the conclusion of the report plainly establishes that she can work and constitutes substantial evidence supporting the Commissioner's decision. That is true notwithstanding the later evaluation by Cindy Dodson

Ritchey, LPC, who opined that Vaught could not work, but whose opinion was accorded little weight by the Commissioner in part because it was not supported by her own clinical findings. Review of Ritchey's clinical records does not contradict Dr. Eaton's assessment that Ritchey can perform some work. As such, the Commissioner's decision is supported by substantial evidence and must be affirmed.

## I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or

2

considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

3

work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Vaught was born in 1976 (Administrative Record, hereinafter "R." 19), and at the time of the Commissioner's decision was considered a "younger individual" under the Act. 20 C.F.R. §§ 404.1563(b), 416.963(b). Vaught graduated from high school and had past relevant work as a cashier and factory worker. (R. 19.) Vaught alleges a disability onset date of August 24, 2004, claiming that the following conditions limited her ability to work: "[d]egenerative disc; fibromyalgia; stomach; migraines; hands; female problems; back; right knee; sinus, extreme fatigue, depression." (R. 105.) Her application for benefits was rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was convened before an Administrative Law Judge ("ALJ") on March 8, 2006. (R. 31-67.) In determining whether Vaught was disabled under the Act, the ALJ found that she had medically determinable impairments, including fibromyalgia, degenerative changes of the lumbar spine, chronic gastritis, adjustment disorder, borderline personality disorder, and a history of substance abuse, that qualify as severe impairments pursuant to 20 C.F.R. §§ 404.1520(c), 416.920(c). (R. 22.) The ALJ also found that Vaught has the RFC to lift and/or carry ten pounds, stand and/or walk up to four hours in an eight hour workday, and sit for up to six hours. (R. 23.) The ALJ further noted that Vaught "is unable to perform jobs that involve more than moderate levels of stress or frequent interaction with the public." (R. 23.) The ALJ found that Vaught could not perform her past relevant work, but could perform less than a full range of sedentary work at jobs that do not involve more than moderate stress or frequent interaction with the public, such as an assembler or packer. (R. 23.) As such, the

4

ALJ concluded that Vaught was not under a disability as defined in the Act. The Appeals Council denied Vaught's request for review, and this appeal followed. (R. 7-9.)

III

At its early stages, Vaught's application for disability benefits focused on her physical impairments. As the administrative record developed, however, the focus shifted to her mental health issues. Review of the record makes it clear that substantial evidence supports the Commissioner's decision that Vaught's physical impairments do not render her disabled from all work.

A state agency physician, Robert Saunders, conducted a physical examination of Vaught on December 11, 2004. (R. 264-69.) At the examination, Vaught complained of severe mid-back pain caused by degenerative joint disease, right knee pain originating with a fall, and gastritis, which had improved somewhat following surgery in 2004. On physical examination, Dr. Saunders described her gait as shuffling and noted that she demonstrated moderate difficulty getting on and off the examination table. Vaught successfully performed coordination tests, however, and Dr. Saunders noted that while her gait was slow and shuffling, it was "actually normal." (R. 267.) Vaught had normal range of motion with the exception of pain upon flexion of the thoracolumbar spine and of the right knee. (R. 267.) An x-ray of her lumbar spine revealed "moderate narrowing with changes secondary to degenerative disk disease at L4-L5 level." (R. 270.) An x-ray of her right knee showed "[v]ery minimal degenerative changes on the medial aspect of the joint." (R. 271.) Motor strength and neurological tests were normal. (R. 268.) Based on his physical examination, Dr. Saunders determined that Vaught could walk and stand four hours cumulative during a work day, based upon her thoracolumbar dysfunction and right knee pain, decreased range of motion and some deconditioning. Dr. Saunders stated that Vaught could sit between four

5

and six hours without restrictions. (R. 268.) Dr. Saunders noted appropriate postural limitations and that Vaught could be expected to lift and carry less than ten pounds frequently. Dr. Saunders noted no manipulative limitations on Vaught's ability to reach, handle, feel, grasp or finger, and "no other relevant visual, communicative or workplace environmental limitations." (R. 269.) Fairly consistent with Dr. Saunders' evaluation was the Physical RFC Assessment completed on February 25, 2005 by state agency physician Dr. Randall Hays (and affirmed on review on May 3, 2005 by Dr. Richard M. Surrusco), which concluded that Vaught could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six hours and sit for six hours. (R. 311-17.)[2]

There are no contrary medical opinions in the administrative record, nor any medical opinions indicating that Vaught is physically disabled from performing any substantial gainful activity over a twelve month period.[3] As such, the ALJ's conclusion that Vaught retains the RFC to lift and carry ten pounds, stand and walk for four hours and sit for six hours in a work day is supported by substantial evidence. (R. 23.)

## IV

Vaught's appeal focuses primarily on her mental impairments. She argues that the ALJ erred by failing to note the inconsistencies in Dr. Eaton's evaluation and that he, at the very least, should have recontacted Dr. Eaton to resolve the ambiguity in her evaluation of

---

[2] Although not a psychiatrist or psychologist, Dr. Saunders noted that Vaught "has a notably flat affect about her. She is clearly anxious." (R. 266.)

[3] The record does contain three medication evaluation forms for Virginia's Temporary Assistance for Needy Families, food stamps and other such assistance, each of which state that Vaught was physically unable to work for a period of less than 60 days. (R. 259-60, 280-81, 349-50.) These forms were completed on August 26, 2004, March 17, 2005 and May 5, 2005. Each appears to concern bowel and abdominal issues. These short term evaluations done for temporary assistance programs fall far short of the requirements for social security disability and do not lessen the evidentiary weight of Dr. Saunders' examination and evaluation.

6

Vaught. Vaught also claims that the ALJ erred by not properly crediting the opinion of Cindy Ritchey, LPC.

## A.

Dr. Eaton conducted an evaluation of Vaught on January 30, 2005 by reviewing her records, interviewing her and performing a Mental Status Exam. (R. 273.) Dr. Eaton's report recounts in some detail the myriad tragic events of Vaught's young life, including family history of mental illness, sexual trauma, physical and emotional abuse and a prior suicide attempt. (R. 274-75.) Nevertheless, Vaught performed fairly well on the Mental Status Exam, and Dr. Eaton estimated her intelligence as being in the average range and concluded that her thought process was logical and coherent. (R. 276.) At the same time, Dr. Eaton noted that "Vaught endorses symptoms of depression, anxiety, and panic along with some mild symptoms of avoidance and OCD." (R. 276.) Dr. Eaton stated that Vaught's depression has always been present, but has worsened in the past three years. Dr. Eaton noted Vaught's symptoms of anxiety to include "constant worry, easily agitated, muscle tension, expecting the worst to happen, and some tremor." (R. 276.) Dr. Eaton also listed some obsessive complusive tendencies, particularly involving germs. (R. 276.)

With regard to Vaught's Functional Evaluation, Dr. Eaton concluded that "Vaught's mental health issues do not impair her ability to perform work activities on a regular basis." (R. 277.) Dr. Eaton found no impairment in her ability to perform simple, repetitive tasks or more complex, detailed tasks. Dr. Eaton did not believe that Vaught required special or additional supervision to perform work activities and found no impairment in her ability to accept instructions from supervisors.

Dr. Eaton noted that her mental health issues did not in the past prevent Vaught from maintaining regular attendance in the workplace, but that continued intensification of her

7

mental health issues "could cause some impairment at this time or at a later date. The longer she stays at home, the more severe this impairment will become, as it could reinforce her beliefs that home is safer than being in public." (R. 277.)

Dr. Eaton also noted that a "panic attack, when they (sic) occur, could prevent Ms. Vaught from completing a normal workday or workweek. She has not experienced one in the past several months." (R. 277.)[4] Dr. Eaton described Vaught as suffering from "pervasive" anxiety, which, along with her depression, were both "longstanding and overwhelming to her." (R. 277.) Dr. Eaton concluded that Vaught showed visible anxiety when interacting with the public and would likely do so with coworkers. Dr. Eaton observed that "Vaught shows some impairment in her ability to deal with the usual stresses encountered in competitive work." (R. 277.) As a Diagnostic Impression, Dr. Eaton wrote that "[a]lthough she can tolerate being away from the safety and familiarity of her home, she does so with marked distress and in (sic) unable to tolerate the stress of operating a car." (R. 277.) Dr. Eaton pegged Vaught's GAF at 52.[5]

Shortly after Dr. Eaton's evaluation, non-examining state agency physicians completed Mental RFC Assessment and Psychiatric Review Technique forms. (R. 300-03, 318-31.) Neither of these reports noted any marked or extreme functional limitations. (R. 300-01, 328.)

---

[4] There is scant reference in the record to Vaught actually suffering a panic attack. Vaught's New River Valley Community Services Intake Evaluation sheds some light on both the substance of such claimed attacks and her credibility, as follows: "Client indicates that she experienced DT's in the hospital, but encouraged the perception that she was suffering from panic attacks." (R. 365.)

[5] The Global Assessment of Functioning, or GAF, scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic And Statistical Manual Of Mental Disorders Fourth Edition 32 (American Psychiatric Association 1994) [hereinafter DSM-IV]. A GAF of 51-60 indicates than an individual has "[m]oderate symptoms . . . OR moderate difficulty in social, occupational or school functioning . . ." Id.

Five months after the evaluation with Dr. Eaton, Vaught overdosed on sleeping pills and was hospitalized for a week at the Southwestern Virginia Mental Health Institute.[6] The Discharge Summary dated August 9, 2005 noted that Vaught displayed a restricted, almost blunted affect, and that she was mildly depressed. On the other hand, her thought processes were sequential and logical. Vaught was alert and oriented, and demonstrated no problems with attention and concentration, memory or abstract thinking. Vaught appeared to be of average intelligence with fair insight and judgment. (R. 389-90.) Vaught was discharged with diagnoses of adjustment disorder with mixed disturbance of emotions and conduct, dysthymic disorder, polysubstance dependence, and borderline personality disorder. The discharging physician, Dr. Clifford Hall, pegged her discharge GAF at 55. (R. 391.) Vaught was to be followed after discharge by the New River Valley Community Services Board.

The record reflects that Vaught was seen by New River Valley Community Services ("NRVCS") over the next several months. The NRVCS Intake Evaluation noted that much of her stress was "identified as coming from multiple chronic medical conditions, for which she states she has significant pain." (R. 363.) Further, the evaluation identified as a precipitating event the release from jail of a man who had stabbed and attempted to suffocate her. The evaluation pegged her GAF at approximately 51.

Cindy D. Ritchey, LPC, saw Vaught eight times from September 26, 2005 to January 23, 2006. The notes from the sessions generally reflect anxiety, mild to moderate depression and sleep disturbance. Many of the counseling sessions focused on parenting issues, and some also concerned stress associated with family and relations with her former husband and

---

[6] As noted on her admitting Psychiatric Evaluation, Vaught's GAF at admission was 46. (R. 397.) A GAF score of 46 corresponds to "serious symptoms" or any serious impairment in social, occupational, or school functioning. DSM-IV 32.

boyfriend. At oral argument, Vaught focused the court's attention on the last two counseling sessions in January, 2006. On January 3, 2006, the progress note reflects that Vaught was "depressed and anxious with congruent affect. Complained of increase in stress and desire to withdraw." (R. 378.) That record also noted "isolating behavior." (R. 378.) The subject of the January 3, 2006 session was "parenting issues that are triggering trauma symptoms." (R. 378.) In her last counseling session with Vaught on January 23, 2006, LPC Ritchey noted that Vaught was "depressed, feeling overwhelmed, difficulty concentrating, increase in desire to sleep, decrease in desire to eat; fatigue; anhedonia; tearful in session." (R. 379.) The subject of that session was "[s]tress related to children's care and financial support." (R. 379.) Vaught was seen a week later, on February 2, 2006, by Dr. W.D. Clarkson of NRVCS. The notes from that visit indicate discussion with Vaught about usual problems handling children, the fact that she was taking parenting classes, and her trouble getting to sleep. (R. 361.)

At the request of disability counsel, LPC Ritchey completed a Mental Impairment Questionnaire on February 27, 2006. This evaluation noted that Vaught's current GAF was 50, and the highest GAF over the past year was 60. LPC Ritchey's evaluation reflected many categories of marked limitations in Vaught's mental abilities and aptitudes needed to work. (R. 337-38.) Concerning functional limitations, Ritchey noted that Vaught had marked limitations in her activities of daily living, marked limitations in maintaining social functioning, extreme deficiencies in the areas of concentration, persistence or pace, and she noted three episodes of decompensation in a twelve month period, each of at least two weeks duration. (R. 338.)[7] As additional explanation, Ritchey noted that "[t]he client is a single

---

[7] There does not appear to be any basis in the record for Ritchey's listing of three episodes of decompensation, each of two weeks' duration, in a twelve month period. While the overdose episode certainly occurred, there is nothing in the medical record, including LPC Ritchey's own notes, to suggest other episodes of decompensation of such a prolonged duration.

parent of 2 emotionally disturbed children who, for emotional and behavioral reasons, require special considerations in school. This involves constantly attending to situations that arise out of their problems." (R. 339.)

Considering this evidence, the ALJ concluded that Vaught had severe mental impairments consisting of "adjustment disorder, borderline personality disorder, and a history of substance abuse." (R. 22.) The ALJ concluded that these impairments rendered Vaught "unable to perform jobs that involve more than moderate levels of stress or frequent interaction with the public." (R. 23.)

### B.

This appeal turns on whether the Commissioner's evaluation of Vaught's mental impairments is supported by substantial evidence. Vaught argues that LPC Ritchey's evaluation, accorded little weight by the ALJ, supports a disability determination. The ALJ discounted Ritchey's assessment for two reasons.

First, the ALJ noted that Ritchey is neither a physician nor psychologist, and 20 C.F.R. § 404.1527(a)(2) and § 416.927(a)(2) require that medical opinions be rendered only by such acceptable medical sources. See 20 C.F.R. § 404.1513(a) (listing medical sources who can opine as to the existence of a medically determinable impairment); § 416.913(a) (same). Vaught points out correctly, however, that although LPC Ritchey is not an acceptable medical source capable of rendering a medical opinion under § 404.1527(a)(2) and § 416.927(a)(2), her evaluation may be considered by the Commissioner to show the severity of Vaught's impairments and how they affect her ability to work. 20 C.F.R. § 404.1513(d); § 416.913(d). Thus, while LPC Ritchey's evaluation does not rise to the level of a "medical opinion" as she is not an "acceptable medical source" under the regulations,

her assessment may be considered under § 404.1513(d) and § 416.913(d). To that extent, the ALJ's criticism misses the mark.

Second, the ALJ concluded that LPC Ritchey's evaluation was not supported by "her own clinical findings or the consistent opinions of the reviewing psychologists at the initial and reconsideration levels." (R. 22.) On this score, the ALJ's conclusion is well supported. A wide gulf separates the level of mental impairment reflected in LPC Ritchey's counseling sessions from her later disability evaluation. Indeed, while the counseling sessions focused mainly on parenting, family and relationship issues encountered by Vaught and do not support the argument that Vaught cannot function adequately at home or in the workplace, the Mental Impairment Questionnaire completed by LPC Ritchey reflects impairments at the marked or extreme end of the scale, including marked functional limitations in her activities of daily living and maintaining social functioning, and extreme deficiencies of concentration, persistence or pace. There is also a vast difference between the questionnaire response from LPC Ritchey and the evaluation of Dr. Eaton. Both from LPC Ritchey's treatment notes and Dr. Eaton's evaluation, there was ample reason for the ALJ to accord less weight to LPC Ritchey's assessment and find Vaught's mental impairments not wholly disabling.

### C.

Vaught also points to a few aspects of Dr. Eaton's evaluation as supporting a disability finding. In particular, Vaught argues that two portions of Dr. Eaton's evaluation suggest she is becoming increasingly withdrawn and isolated, warranting a disability determination. First, Dr. Eaton noted that when Vaught last worked in 2004, her mental health issues did not preclude her from working. But she added, "[h]owever, her mental health issues have continued to intensify, and could cause some impairment at this time or at a later date. The longer she stays at home, the more severe this impairment will become, as

12

it could reinforce her beliefs that home is safer than being in public." (R. 277.) Dr. Eaton also observed that "[a]lthough she can tolerate being away from the safety and familiarity of her home, she does so with marked distress and in (sic) unable to tolerate the stress of operating a car." (R. 277.) Vaught argues that if she cannot leave the home or drive a car, certainly she cannot work. While that may be true in theory, the suggestion that Vaught cannot leave home or drive, divined from those two snippets of Dr. Eaton's opinion, is not consistent with the essence of Dr. Eaton's evaluation, which plainly states that Vaught is not impaired by her mental impairments to the point of disability. Vaught's own catalog of her activities of daily living do not suggest she is home bound.[8] (R. 117-24, 141-48.) In the several months of clinical notes documenting Vaught's eight visits with LPC Ritchey, only one refers to "isolating behavior" and a "desire to withdraw." (R. 378.) Vaught's argument that her mental health issues keep her confined to her home and prevent her from working is simply not well supported by the record. Rather, Dr. Eaton's evaluation of Vaught, in which she concludes that "Vaught's mental health issues do not impair her ability to perform work activities on a regular basis," (R. 277), constitutes substantial evidence to support the ALJ's decision.[9]

---

[8] The ALJ found Vaught not to be totally credible. In assessing this finding, it is worth noting that while Vaught ostensibly told Dr. Eaton that she was "unable to tolerate the stress of operating a car," (R. 277), her Intake Evaluation at NRVCS noted that "[c]lient is being charged with liability for an automobile accident that she indicates will be testified as a mechanical failure." (R. 366.) Further, her Discharge Summary at Southwestern Virginia Mental Health Institute noted that Vaught has a "[p]ending court hearing for reckless driving." (R. 390.)

[9] Dr. Eaton also noted that "[a] panic attack, when they (sic) occur, could prevent Ms. Vaught from completing a normal workday or workweek. She has not experienced one in the past several months." (R. 277.) While noting that a panic attack could disrupt Vaught's work, Dr. Eaton obviously did not consider any such attacks to be disabling as she unambiguously concluded that Vaught's "mental health issues do not impair her ability to perform work activities on a regular basis." (R. 277.) Further, as noted above, Vaught's claimed panic attacks lack credibility as she admitted to NRVCS that she had "encouraged the perception that she was suffering from panic attacks," (R. 365), in the hospital to mask her delirium tremens.

13

Vaught also argues on appeal that the Commissioner should have sought clarification from Dr. Easton concerning the ambiguity in her evaluation. In reviewing a report from a consultative examiner, the ALJ considers the following factors:

> (1) Whether the report provides evidence which serves as an adequate basis for decision making in terms of the impairment it assesses;
>
> (2) Whether the report is internally consistent; Whether all the diseases, impairments and complaints described in the history are adequately assessed and reported in the clinical findings; Whether the conclusions correlate the findings from your medical history, clinical examination and laboratory tests and explain all abnormalities;
>
> (3) Whether the report is consistent with the other information available to us within the specialty of the examination requested; Whether the report fails to mention an important or relevant complaint within that specialty that is noted in other evidence in the file (e.g., your blindness in one eye, amputations, pain, alcoholism, depression);
>
> (4) Whether this is an adequate report of examination as compared to standards set out in the course of a medical education; and
>
> (5) Whether the report is properly signed.

20 C.F.R. § 404.1519p(a). If, however, a consultative opinion is inadequate or incomplete then the ALJ must "contact the medical source who performed the consultative examination, give an explanation of [the Commissioner's] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b).

In no sense can Dr. Eaton's report be considered inadequate or incomplete. It plainly supports the ALJ's decision that Vaught is not disabled by her mental health issues. Although the aspects of the evaluation on which Vaught focuses suggests that over time her ability to be away from home may become more stressful for her, even to the point of

14

causing "marked distress," (R. 277), Dr. Eaton clearly states that her mental health issues do not impair her ability to work and that "she can tolerate being away from the safety and familiarity of her home." (R. 277.) Dr. Eaton's evaluation is clear – Vaught's mental health issues do not keep her from working – and it is not so ambiguous, incomplete or inadequate to require further inquiry by the ALJ.

Finally, Vaught argues that Dr. Eaton's evaluation hints that her condition may worsen, and that her impulsive overdose of sleeping pills a few months later bears this out. While that incident is indeed very troubling, the medical records of Vaught's subsequent hospitalization reflect that it followed shortly on the heels of stopping her anxiety medications, and that after being stabilized at the hospital for a few days, she recognized the dangers of an overdose, regretted it and affirmed that she would not do it again out of concern for her children. (R. 387.) The Commissioner argues that Vaught's overdose, while obviously of significant concern from the standpoint of the well-being of Vaught and her children, is just that, an impulsive episode, and does not reflect a functional inability to work over a twelve month period.[10] Despite the overdose, the Commissioner points out that upon release from the hospital and throughout subsequent counseling sessions, Vaught's GAF levels were in the moderate 50 range, suggesting no long term disabling condition. On balance, there is substantial evidence to support the Commissioner's conclusion that Vaught's mental health issues did not prevent her from engaging in any substantial gainful activity over a twelve month period. As such, it must be affirmed.

---

[10] Apparently, this was Vaught's second overdose episode, as Dr. Eaton's report noted that she overdosed in 1999 or 2000, some four to five years prior to her claimed disability onset date. (R. 275.)

**V**

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, the court does not suggest that Vaught is totally free of any distress. The objective medical record simply fails to document the existence of any physical and/or mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Vaught's claim for benefits and in determining that her physical and mental impairments would not prevent her from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, the undersigned concludes that the Commissioner's decision must be affirmed and the defendant's motion for summary judgment **GRANTED**.

Enter this 24th day of April , 2009.

_____

Michael F. Urbanski
United States Magistrate Judge